# CHARLESTON.

## BRIGHTWELL, TRUSTEE, *v.* HOOVER.

### February 27, 1874.

A party seeking to enforce a lien for the payment of purchase-money, on a contract of sale made between the first day of May, 1861, and the first day of May, 1865, said money to be paid in Confederate States Treasury notes, or Virginia Treasury notes, is entitled to the value of the same, to be ascertained under the act of the Legislature, passed on the 7th day of April, 1873, being chapter one hundred and sixteen and entitled, "an act providing for the adjustment of certain liabilities arising under contracts made between the first day of May, 1861, and the first day of May, 1865. *

Appeal, by the complainant, from a decree of the circuit court of Greenbrier county, rendered on the 26th day of April, 1869, in a suit in chancery therein pending, wherein Henry B. Brightwell, as trustee for Sophia A. B. Hurley, wife of Reuben Hurley, was complainant and Samuel S. Hoover and said Reuben and Sophia A. B. Hurley, were respondents.

The opinion of the Court contains a sufficient statement of the facts in the case.

The Hon. Nathaniel Harrison, judge of said circuit court, presided at the hearing below.

*Samuel Price* and *Robert F. Dennis,* for the appellant.

*John W. Harris,* for the appellee.

---

* For the act referred to in the syllabus see *Jameson v. Myles Exor. infra.*

PAULL, JUDGE:

The bill in this case was filed by the plaintiff as trustee for Mrs. S. A. B. Hurley, to enforce a lien for the purchase money, due upon the sale of a tract of land, made to Saml. S. Hoover. The proceedings was commenced in the circuit court in November, 1866. The said Hoover, Mrs. S. A. B. Hurley and her husband, Reuben Hurley, were made parties defendant and all filed their separate answers. The bill recites the fact of sale and that the said Hoover, agreed to pay for said land the sum of $3,000, of which $1,500 was paid in Confederate money on the day of the sale, to-wit: the 5th day of June, 1863, and that said Hoover, executed to the plaintiff his two bonds, each bearing date on the said 5th day of June, 1863, for $750 each, one falling due twelve months, and the other two years, after date and bearing interest therefrom. The bill further alleges, that these bonds, as they showed upon their face, were to be paid and discharged in whatever money was the currency of the country, at the time they were actually payable. The bill further states that these bonds were taken and destroyed by the Federal soldiers, and therefore cannot be produced; but that the deed made to the said Hoover, the vendee of said land, filed as part of the bill, shows the contract between the parties, and disclose, the fact that a lien was retained on said house and lot or parcel of land, for the unpaid purchase money, to-wit: $1500, with its interest due and payable, as herein before set out; that the balance of said purchase money is unpaid, and prays for a sale of the land for its payment, and general relief. These are all of the allegations of the bill that it is now necessary to notice. This parcel of land was conveyed by Reuben Hurley as attorney in fact for the plaintiff, to the said Hoover.

Reuben Hurley files his answer, under oath, admitting the contract of sale as alleged in the bill, and that the same was made under a power of attorney executed by

1874.
January Term.

Brightwell
v.
Hoover.

the plaintiff to him, but whether the same is valid or not, is a question submitted by him to the judgment of the court. He admits the payment of $1500 of the purchase money in Confederate money, and that the same had been safely invested for the benefit of Mrs. Hurley, (the *certui que trust*,) as so much good money ; that the bonds for the deferred payments simply called for so much money, and that they were taken from him and destroyed by the Federal soldiers.

Mrs. Hurley filed her answer, under oath, alleging that the plaintiff, as her trustee under the deed of marriage settlement, dated the 17th day of August, 1852, could not sell any portion of her property, or change its character, or the character of the instrument, unless by her direction in writing, and avers that the house and lot in the bill mentioned was a portion of her estate, and that she never did authorise the plaintiff, in writing, to sell the same ; while denying that the "sale was a Confederate sale," she says the property was sold for its real value in good money, and that a portion of the purchase money was received in Confederate notes, and that the same was invested as good money for her benefit; that a lien exists upon the property for the balance of the purchase money which has never been paid. She then asks that this lien be enforced by a sale of the property, or that the contract be rescinded, and the property restored to her possession.

The vendee, Hoover, also files his answer under oath, admitting the sale, and the execution and delivery of the deed, from Hurley, as attorney in fact for the plaintiff, and the execution of the two bonds for $750, each, for the deferred payments of the purchase money, and that the same have never been paid; although alleging that before the maturity of said bonds he repeatedly endeavored to deliver sufficient of the treasury notes and currency of the Confederate States, to the plaintiff, but was prevented from so doing by the military disturbances at the time. The answer further alleges that said bonds were, by the

terms, and on the face thereof, to be paid "in currency and not otherwise," and that thereby the parties meant and agreed that said bonds should be paid in treasury notes or in currency issued by and under the authority of said so called Confederate States; the answer further denies that said bonds are lost, or not in existence or producible by the plaintiff.

This bill and all the answers were filed before the present Code went into operation, and there are no replications to the answers, and no proofs in the cause.

In this state of the pleadings, it is objected in the first place, that the bill cannot be sustained, because it is not accompanied with an affidavit of the loss of the bonds, the payment of which the plaintiff is seeking to recover. A sufficient answer to this objection is found in the fact that the bill sets forth the deed itself in which the lien is retained, and where it is expressly recited to be for the payment of $1500, the residue of the purchase money, $750 due in twelve months from date, and $750, the residue, due by bond in two years from above date, with interest on said bonds till paid. This deed is of equal dignity with the bonds, and the provisions of this deed the bill seeks to enforce, and if they are enforced, the decree would provide that said bonds, if in being, be delivered up and cancelled. Moreover, the husband of the *cestui que trust*, Reuben Hurley, alleges in his sworn answer that said bonds are lost. These we think remove the objection, even if there had been a demurrer to the bill.

Another objection to this proceeding is found in the answer of Mrs. S. A. B. Hurley, to-wit: that she never consented, in writing, to the making of this sale to Hoover. Admitting this to be true, we think she must now be held to have ratified the sale by her subsequent acquiescence. She admits in her answer, as does also her husband in his, that she has taken the benefit of the sale by receiving one half of the purchase money and

44

having the same invested for her use, and by now asking that the property be sold for the payment of the balance.

Another question is submitted in the answer of Reuben Hurley, to-wit: the validity of the power of attorney from Henry B. Brightwell, trustee, to sell and convey the property in question. Upon this point, the record does not disclose sufficient information as to the facts. The bill recites that the plaintiff is the trustee of Mrs. Sophia A. B. Hurley, by virtue of a deed of marriage settlement filed with the bill, dated the 17th day of August, 1852, and as such trustee he sold the land in question to defendant Hoover; there is nothing to show that this land is embraced in said deed of marriage settlement, or was purchased with the trust funds arising from said land, or is in any way, whatever, subject to its provisions. It was conveyed to said Brightwell in the year 1859, by W. C. Woodson, a commissioner, making sale thereof under order of court; and while it was conveyed to Brightwell, as trustee, for Sophia A. B. Hurley, we cannot necessarily infer that it was so conveyed to him as trustee under the marriage settlement aforesaid. The deed of Woodson to Brightwell is a trust deed, but its provisions are not the same, or coextensive with those of the marriage settlement, but only so in part. The plaintiff is dealing with the subject of this last deed, under power, as he claims in his bill derived from the former; but the power of attorney does not itself designate under which deed he is acting in this proposed sale. No opinion is intimated on this question until more definite information is given, either by amendment of the bill or answers, if the parties shall so desire.

The answer of defendant Hoover, alleges that these bonds, for the purchase money were to be paid in Confederate Treasury notes and not otherwise; this language simply intimates the agreement of the parties, both affirm-

atively and negatively, that the bonds should be paid in Confederate money. Taking this answer in the state of the pleadings to be true, the plaintiff is entitled to enforce the collection of his claim in a court of equity, and to receive the actual value of the Confederate money at the time and place of the contract, in lawful money of the United States. *Thorington v. Smith*, 8 Wall. (Sup. Ct. U. S.) 1.

By the second section of an act passed by the Legislature of this state on the seventh of April, 1873, it was provided that where any contract made between the first day of May, 1861, and the first day of May, 1865, was to have been performed or fulfilled in Confederate States Treasury Notes, or Virginia Treasury Notes, the same shall be liquidated and settled by reducing the nominal amount due, or payable, under such contract, in Confederate States Treasury Notes or Virginia Treasury Notes, to its true value at the time such contract was made or entered into, or at such other time as may to the court or jury, if it be a jury case, seem right in the particular case. This contract was made within the times expressed by this act, and is subject to its operation. In view of this fact, and of the foregoing authority and others, the decree entered in this cause on the 26th day of April, 1869, is reversed with costs to the appellant, and this case is remanded to the circuit court of Greenbrier county, with leave to the parties to amend their pleadings, if desired, and to ascertain the value of the Confederate money yet to be paid, under the sale to Hoover, according to the provisions of the act of the Legislature aforesaid.

The other Judges concurred.

DECREE REVERSED AND SUIT REMANDED, WITH LEAVE TO AMEND.